| 97 | 495 |
| 99 | 139 |

# Richmond.

## Richmond & Danville Railroad Co. v. Tribble's Administrator.*

### March 19, 1896.

1. Railroads—*Parted Train—Collision between Sections—Negligence—Fellow-Servants—Proximate Cause of Injury.*—In the case in judgment the rules of the railroad company require that, if the train should part, the flagman shall immediately apply the brakes and stop the cars, and the engineman shall keep the front part of the train in motion until the detached portion is stopped. A freight train parted between the seventh and eighth cars from the engine in consequence of defective coupling, of which defect the company had notice. After parting, the engine and front cars kept in motion for four or five miles, and then stopped, the engineer supposing the rear portion had been stopped. The train was equipped with brakes sufficient to control it, but no brakes were applied by the flagman, nor by the intestate of the defendant in error, who was a brakeman on the second car from the front of the detached portion, though if they had put one brake down it would have stopped the train, and in consequence of the failure to stop the detached portion of the train it followed—a part of the way over an up grade—until it collided with the front portion of the train, and killed the intestate.

*Held:*

The proximate cause of the injury was the negligence of the intestate, his fellow-brakeman, or the engineman, and the defects of the machinery were but the remote or secondary cause of the accident, and there can be no recovery by the defendant in error.

Error to a judgment of the Circuit Court of Culpeper county, rendered March 24, 1893, in an action of trespass on the case

---

* Recently directed to be reported.

wherein the defendant in error was the plaintiff, and the plaintiff in error was the defendant.

*Reversed.*

The opinion states the case.

*W. H. Payne* and *Leonard Marbury*, for the plaintiff in error.

*John M. Johnson* and *Rixey & Barbour*, for the defendant in error.

KEITH, P., delivered the opinion of the court.

Thaddeus G. Tribble, administrator of Edward Tribble, deceased, brought an action of trespass on the case in the Circuit Court of Culpeper County against the Richmond and Danville Railroad Company, in which he alleges that, in October, 1890, his intestate, Edward Tribble, while engaged as a brakeman on the train of the defendant company, was killed through the negligence of the defendant, and therefore the plaintiff sues to recover damages. The particular negligence of which complaint is made is stated in the declaration to be that the coupling links and pins were unsafe, unsound, and defective; that the caboose or conductor's car of the train was not wide enough to permit the green lights, carried on each side of it in the night-time, to be seen by the engineer of the train when moving upon a straight track; that the whistle of the engine, with which signals are communicated by the engineer, was so defective as to be wholly insufficient for the purpose for which it was designed; that, by reason of a defective link or coupling pin, the train parted, and by reason of the narrowness of the caboose car the signal lights were invisible to the engineer, and that by reason of the insufficiency of the whistle he was not able to communicate the situation to the brakeman, by reason whereof, the train having parted, and the two sections subsequently coming together with great violence, the plaintiff's intestate, while engaged in the dis-

charge of his duty, without fault or blame upon his part, was caught between the cars, and so crushed and mangled that he then and there died from the injury. There are several counts in the declaration, but this is a sufficient statement of what they contain. Upon the trial, after the evidence had been introduced, the defendant filed a demurrer to the evidence, and thereupon the jury found a verdict for the plaintiff, subject to the defendant's demurrer and assessed his damages at $4,500. Upon this verdict the Circuit Court entered a judgment, and thereupon the defendant applied for and obtained a writ of error from one of the judges of this court.

It appears that, upon the day of the accident, the train upon which defendant's intestate was employed left the city of Alexandria, going in the direction of Lynchburg, over the road of defendant company; that, after passing Culpeper, a station upon its road, and a short distance before reaching Winstonville station, the train, which consisted of an engine and twenty cars, including the caboose, parted between the seventh and eighth cars, the engine and seven cars going forward and the remainder of the train following it; that after passing Winstonville and Mitchell's stations, at a point about a mile or a mile and a half south of Mitchell's station, the rear division of the train overtook the engine and the cars attached, crushed into them, and defendant's intestate was instantly killed. It appears that the defendant's intestate, at the time of his death, was, together with a fellow-brakeman, who was also killed, upon an open or gondola car, loaded with railroad iron. This car was the ninth in the train, counting from the engine, and, as the engine moved off with seven cars attached to it, there was, after the parting of the train, only one car, and that a box car, in front of the gondola upon which the plaintiff's intestate received the injury. There is a good deal of evidence with respect to the coupling and pin, the width of the caboose car, and the condition of the whistling apparatus of the engine, and it may be conceded that

this evidence tends to prove, and, upon a demurrer to the evidence, must be taken as proving, that they were defective and unsafe, and that their condition was known to the defendant company; but, in the view we have taken of it, all the evidence as to the condition of the coupling, the pin, the caboose, and the whistle is wholly immaterial, and need not be further considered.

The uncontradicted evidence is that this train was equipped with brakes sufficient for its complete control; that the train parted before reaching Winstonville, and that the collision occurred a mile south of Mitchell's station; in other words, that, after the train parted, and before the collision occurred, a distance of at least four or five miles was covered, and that portion of the train upon which the defendant's intestate was injured, moving only with its own momentum, overtook and collided with the seven cars drawn by an engine, after passing over the distance above stated, on a track a part of which was an ascending grade. It seems that the separation of trains is not of infrequent occurrence, and rule 211 of the defendant company provides as follows: " If the train should part, the flagman must immediately apply the brakes and stop the cars, and then send forward the most reliable person he can command to make danger signals, until the front portion of the train comes back, while he protects the rear of the train as per rule 99." As we have seen, the deceased was on the ninth car from the engine. After the parting of the train there was but one car in front of him, and it is impossible to believe that the accident would not have been known to him had he exercised the most ordinary care in the discharge of the duties of his position. That a train in the night-time should part, and the engine and seven cars move off, and that persons upon the cars constituting the rear portion of it should be wholly unconscious of the accident, is almost incredible. The absence of the smoke, the steam, the noise, and, above all, of the light from the engine, the absence of that

force and control which an engine exerts upon a train to which it is attached, in passing over a track where upgrades and downgrades alternate, must have forced a knowledge of the situation upon the attention of those upon the rear portion of the train, had they been in the least attentive to what was passing around them; and, above all, it must have been known to the plaintiff's intestate, as, between him and the front of that portion of the train upon which he was stationed, only one car was interposed, and yet those thirteen cars were permitted to traverse a distance of about five miles, impelled by no force save their own momentum, and overtake and collide with the front portion of the train, having the same original momentum, with an engine attached, without any effort to use the appliances at hand to bring the train to a halt. Had the deceased been attending to his duties, and observant of what was transpiring around him, as was his plain duty, the means were at his hand by which the disaster could have been easily averted. It was negligent in him not to be aware of his peril, under the circumstances disclosed in this record, and gross negligence, if aware of it, not to take measures for his own safety, when the means for doing so were within reach. Upon the parting of the train it becomes the duty, as we have seen, of the brakeman upon the rear of the train to bring it to a halt. It is the duty of the engineer to keep his train in motion so as to keep out of the way of the rear portion of the train until all danger of a collision has passed. This appears from rule 103: "The engineman must give the signal as provided in rule 43, and keep the front part of the train in motion until the detached portion is stopped." The engineman in this case checked the train and "slowed it down" to a speed of five or six miles per hour, under the impression that the detached portion of the train had had ample time to be brought under control, and stopped. He says, and in this respect he is uncontradicted: "I stopped at Cabin Branch with the confidence that the train—that is, the detached portion of it—was on the other

side of Winstonville. If they had put one brake down, it would have stopped." But the one brake was not put down, the detached portion was not stopped, the front of the train was "slowed down" before the engineer knew that the detached portion had been stopped, and that all danger of a collision had ceased, and thereupon the collision occurred, and the defendant's intestate was killed. It seems to us, therefore, that, looking only to the facts established in the record, which are wholly uncontradicted, this unfortunate accident was due either to the negligence of the plaintiff's intestate, or to that of his fellow-brakeman, or to that of the engineman; that these, or one of these, was the proximate cause; and that the defects of machinery averred and proven were but the secondary or remote causes of the disaster. We are of opinion, therefore, that, upon the demurrer, judgment should have been rendered for the defendant. The judgment of the Circuit Court must be reversed, and this court will proceed to enter judgment in conformity with the foregoing opinion.

BUCHANAN and HARRISON, JJ., dissent.

*Reversed.*